AO 472 (Rev. 3/86) Order of Detention Pending Trial
================================================================================

# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. 05-30-P-S** |
| | ) | |
| **MICHAEL FRISCO,** | ) | |
|      Defendant | ) | |

## ORDER OF DETENTION PENDING TRIAL

In accordance with the Bail Reform Act, 18 U.S.C., Section 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I - Findings of Fact

[ ]   (1)   The defendant is charged with an offense described in 18 U.S.C. Section 3142(f)(1) and has been convicted of a (federal offense)(state of local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed) that is

   [ ] a crime of violence as defined in 18 U.S.C. Section 3156(a)(4).
   [ ] an offense for which the maximum sentence is life imprisonment or death.
   [ ] an offense for which the maximum term of imprisonment of ten years or more is prescribed in _____.
   [ ] a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. Section 3142(f)(1)(A)-(C), or comparable state or local offenses.

[ ]   (2)   The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.

[ ]   (3)   A period of not more than five years has elapsed since the (date of conviction)(release of the defendant from imprisonment) for the offense described in finding (1).

[ ]   (4)   Findings Nos. (1)(2) and (3) establish a rebuttable presumption that no condition or combination or combinations of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

**Alternate Findings (A)**

[ ]   (1)   There is probable cause to believe that the defendant has committed an offense
        [ ]   for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.
        [ ]   under 18 U.S.C. Section 924(c).
[ ]   (2)   The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

**Alternate Findings (B)**

[X]   (1)   There is a serious risk that the defendant will not appear.
[X]   (2)   There is a serious risk that the defendant will endanger the safety of another person or the community.

**Part II - Written Statement of Reasons for Detention**

The defendant has been charged by indictment with four counts of interference with commerce by robbery in violation of 18 U.S.C. § 1951(a). Specifically, the defendant is alleged to have conspired with one Lee Wilson to rob four separate pharmacies of prescription opiates. The government seeks the detention of the defendant as a risk of flight and a danger to the community.

The defendant, now 33 years old, has lived in southern Maine his whole life. He presently resides in his own home in Standish. Although his father is in a nursing home in Kennebunk and he has a sister and three half-brothers, the only family member (besides his children) with whom the defendant maintains regular contact is his mother, who is disabled and resides in Old Orchard Beach. The defendant also has an aunt, Julie Yankowsky, who resides in Limington. The defendant's two children, ages 14 and 8, reside with their mother in Limington. The defendant is actively involved in their lives and sees them on a regular basis. Immediately after he was questioned about the robberies that are the subject of the pending indictment, the defendant traveled to Arizona to stay with his brother's ex-girlfriend. He did return to Maine when he was informed that the authorities were attempting to locate him, although he did not turn himself in.

The defendant has been unemployed for approximately two years except for occasional work as a cab driver with Elite and Town Taxi which is based in Portland. He admitted to the interviewing pretrial services officer a recent history of opiate abuse. In 2002 he was prescribed Oxycontin for back pain. He began to abuse this drug and in time put himself in a Methadone maintenance program. He left the program after eight months and began to purchase Methadone on the street. According to the defendant, he stopped using just before his arrest on state charges in November 2004. The defendant reported to the interviewing officer that he began treatment at Mercy Recovery Center in February 2005 but voluntarily terminated about a month ago. The Probation Office has since determined that the defendant was admitted to Mercy's so-called Partial Hospitalization Program, which is a 6 day-a-week program, on April 8, 2005 for opiate dependence and that he stopped attending the program on April 16, 2005 without completing it. The defendant has also admitted to using marijuana since the age of 12 with his most recent usage being 3 to 4 weeks ago. Mercy Recovery Center advised the Probation Office that the defendant

tested positive for marijuana while in their program. The defendant's ex-wife reported, and local law enforcement personnel have confirmed, that the defendant's mother, sister and brothers are all serious drug abusers and that they frequent the defendant's home.

The defendant was initially charged in state court with the conduct giving rise to the pending federal charges. The state charges have now been dropped. The defendant has no other known criminal history.

The defendant proposes that he be released on conditions which include bond secured by the $55,000 equity in the Limington home of his aunt Julie Yankowsky, that he initially be placed in Mercy Recovery Center's in-patient unit, and that after successfully completing the in-patient portion of Mercy's drug treatment program he be released to the third-party custody of his friend and the owner of Elite and Town Taxi, Walter Davenport, and be required to reside at Mr. Davenport's Portland residence with electronic monitoring.

Ms. Yankowsky testified in the defendant's behalf. She agreed to post her Limington home, in which she lives with her husband, her son and her son's fiancée and new baby, as security for the defendant's release. On cross-examination, Ms. Yankowsky, herself a self-described recovering Oxycontin addict, admitted that some members of her and the defendant's family have shared with, and in some cases sold to, other family members their prescription opiates.

Probation Officer R. Matthew Brown testified that the in-patient aspect of the Mercy Recovery Center program is a 7-day program typically available only to those individuals who are determined to be experiencing a medical emergency from their drug abuse and who require immediate detoxification. Otherwise, the Mercy program is an out-patient program.

Mr. Davenport testified that he would be willing to have the defendant reside with him "if necessary" and that, although he didn't wish to be "an extension of the correction system" or "an extension of the court system" he "thinks" he can call the police to report any violations of conditions of release. Mr. Davenport also testified that he works outside the home on average 6 to 7 hours a day, 5 to 7 days a week, leaving for work at 11 a.m. at the latest and returning home no later than 5 p.m.

I am satisfied that there are available conditions of release that can be fashioned that would reasonably assure the defendant's appearance as required. It is clear, however, that the defendant has a serious drug abuse problem which, despite his prior attempts, he has failed to successfully address. His addiction to drugs, coupled with the fact that he has no legitimate source of income and has effectively been unemployed for the past two years, leads inescapably to the conclusion that he poses a risk of danger to the community by engaging in conduct like that alleged in the indictment or some form of drug trafficking. In order to address this risk, any set of release conditions would have to have at its core meaningful third-party custodial supervision. Having carefully listened to the testimony of Walter Davenport, having observed his general demeanor and having heard as well certain statements made by him while he sat at the back of the courtroom as an observer, I conclude that he is not a suitable third-party custodian. Mr. Davenport's remarks were often tainted with sarcasm and surliness. I have no confidence that he would, in fact, report any violations of conditions of release. Finally, Mr. Davenport's own work hours outside the

home would leave a gap in the full-time supervision of the defendant that would be required. No other candidate for third-party custodian has been proposed and none is apparent to me.

Thus, I find, by clear and convincing evidence, that the defendant poses a serious risk of danger to the safety of the community if released and that there are no conditions of release that will reasonably assure community safety. I therefore ***ORDER*** that the defendant be detained pending trial.

## Part III - Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extend possible, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated: June 1, 2005

/s/ David M. Cohen
David M. Cohen
U.S. Magistrate Judge